CHARLES HOPKINS *vs.* GEORGE S. McCRILLIS & another.

Suffolk.    December 8, 1892. — January 6, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Mortgage of Personal Property — Lien — Sale — Exceptions to Master's Report — Waiver.*

A. mortgaged to B. two separate lots of personal property.  B having foreclosed on the first lot, A brought a bill in equity against B., praying for an injunction restraining him from selling the remaining property, for an account, and for a decree that, on the payment by A. to B. of the amount due, A. should hold the property discharged of the mortgage.  The case was referred to a master, who found that A. surrendered to B. the first lot of property, and authorized him to sell the same at retail and apply the net proceeds on the debt until the property should be disposed of on foreclosure sale ; that B. took possession and sold, A. exercising superintendence ; that later B. gave A. written notice of a foreclosure sale, duly advertised the same, and then sold by public auction, obtaining a fair price, but not enough to pay the mortgage ; that B. did not include in this sale any of the second lot of property, because A. so requested and agreed to provide for the payment of the balance due ; that still later, A. paying B. no part of the balance

due and B. never having taken possession of the second lot, B. gave A written notice of a foreclosure sale of the same; that, while B. was in possession of the first lot, B. at A.'s request paid from the proceeds of the retail sales the overdue rent of A.'s store; and that, while so selling, B. at A.'s request purchased certain articles that could not be filled from the stock in the store and the result was beneficial to A. The master further found that an account annexed to B.'s answer was correct, except that interest should be computed from the day when the first foreclosure sale was completed; that the payments stated in the account were for expenditures necessarily incurred by B with the consent of A., that B. had never waived his right to continue to hold the second lot under the mortgage, or to sell the same under the power of sale; that A. had waived all informalities of B and all right to take advantage thereof; and that there was due B. a certain amount with interest. A. filed exceptions to the master's report, which put his case on the theory that the partial sale exhausted the power and released the remaining property. *Held,* that there was no occasion to consider this question, as it was not raised in the bill; and even if the power was exhausted, the lien of the mortgage was not thereby defeated, and might be enforced as though no power of sale had been inserted. *Held, also,* that A. could not repudiate transactions entered into solely for his benefit and at his request, all the items to which he objected being legitimate results of such transactions, and that the finding as to waiver was pertinent, and supported by the facts found.

BILL IN EQUITY, filed January 27, 1891, by the mortgagor of personal property against the mortgagees. The prayer was for an injunction restraining the defendants from selling the property pursuant to a notice given by the defendants to the plaintiff, for an account of what, if anything, was due to the defendants, of what had been received by them, and of the expenses chargeable to the plaintiff, and for a decree that on payment by the plaintiff to the defendants of the amount due the plaintiff should hold the property discharged of the mortgage. The case was referred to a master, who reported as follows.

The plaintiff gave the defendants, on August 21, 1890, a mortgage for $1,700, with interest at six per cent, as represented by two promissory notes of the plaintiff to the defendants, each dated January 1, 1886, one being for $700 on six months, on which $50.03 interest had accrued on August 21, 1890, the other for $1,000 on twelve months, on which interest had been paid to July 1, 1890, then overdue, and on which $1,700 as principal was the balance unpaid. This mortgage was upon two separate lots of personal property; viz. a stock of furniture and fixtures in the store No. 39 Cornhill, in Boston, occupied by the plaintiff, and a lot of household furniture in the plaintiff's residence at Medford. The mortgage and the schedule annexed thereto

enumerated the several articles in each lot. The debt secured by the mortgage was for cash loaned by the defendants to the plaintiff some six years prior to the mortgage, and was originally a larger sum, and the plaintiff had previously given the defendants from time to time, as his stock of goods changed, a mortgage upon said stock to secure the amount due, and some of these prior mortgages had included the lease of the store to the plaintiff. Several of these prior mortgages have not been discharged, and are the ones referred to in the mortgage; but all the mortgages were given to secure one and the same debt, each mortgage containing a provision that the plaintiff could sell in the usual course of trade such portion of the stock as was required, he, the plaintiff, agreeing to replace the same with goods of the same kind and value.

On September 16, 1890, the plaintiff became embarrassed financially, and executed an agreement whereby he surrendered to the defendants, for default in the condition of the mortgage, the mortgaged property, and authorized them to sell the same at retail, and apply the net proceeds to the payment of the debts secured by said mortgages, until such time as the property should be disposed of on a foreclosure sale. This agreement was fairly entered into, and the parties agreed that the defendants should continue the plaintiff's business in his store until a sale at auction under foreclosure proceedings could be had, it being deemed for the best interest of all parties that as much of the stock should be sold at retail as possible. Although this agreement spoke of the property to be thus sold " as the mortgaged property," yet it was construed by the parties as applying only to the stock of goods in the store, not to the household furniture, each party hoping that enough could be realized from the sale to pay the whole debt. The defendants took possession of the store, and employed the clerk and bookkeeper theretofore employed by the plaintiff to take charge of the business, one of the defendants exercising a general superintendence. The plaintiff was present and fully advised of all these acts of the defendants, and assented thereto and approved thereof; and the defendants conducted the business properly, and with due regard to the plaintiff's interests, and obtained better prices for the goods sold than would have

been otherwise obtained. On September 30, 1890, the defendants gave the plaintiff written notice that the mortgage would be foreclosed, as provided therein, "by sale of the property therein described at public auction at No. 39 Cornhill, Boston, Mass., on Saturday, October 11, 1890, at 10 o'clock A. M." The defendants thereupon proceeded to prepare the goods in the store for such auction sale, continuing meanwhile to sell at retail, and also advertised the proposed sale of the stock of goods in the store only, and at the time and place so announced the defendants sold the stock by auction, and obtained therefor a fair price, but not enough to pay the mortgage. This sale was completed, and the proceeds collected, October 13, 1890. The defendants did all the above with due regard for the plaintiff's interest, and at his request.

The defendants did not include in this sale any of the furniture, because the plaintiff so requested, and agreed to provide in some way for the payment of any balance that might remain due on the mortgage debt, and so avoid a sale of the furniture; and on several occasions after the sale, and with a full knowledge of the facts, the plaintiff repeated to the defendants these requests and assurances, but has paid the defendants no part of such balance due.

The defendants never took actual possession of the furniture, and on January 15, 1891, they gave the plaintiff written notice that the mortgage would be foreclosed, as provided therein, "by sale of the property therein described, not heretofore disposed of, at public auction, at your residence in said Medford, on Thursday, the twenty-ninth day of January, A. D. 1891, at 2 o'clock P. M."

On October 11, 1890, while the defendants were in possession of the store, selling the goods at retail, the rent for the month of September, 1890, amounting to $139.58, became due, and the landlord threatened to evict unless it was paid. The plaintiff had a lease of the store, and was desirous of saving the lease to enable him to resume business upon a settlement of his liabilities, and requested the defendants to pay this rent, and they did so, and collected $25 as rent from an under-tenant of the plaintiff's. This payment of rent was made from the proceeds of the retail sales, and the plaintiff made no objections

thereto, though he knew, or must have inferred, that such proceeds were thus applied. While the defendants were thus selling at retail, some orders could not be filled from the stock in the store, and the defendants were obliged to purchase articles to fill these orders. They did this with the plaintiff's consent and at his request, and it resulted to the benefit of the plaintiff.

The master found that the account annexed to the defendant's answer was correct and fairly stated, except that the second item thereof, being for interest upon the mortgage debt, was computed to the date of the answer, and should be revised by computing the interest to October 13, 1890. The master stated the account as follows:

Charles Hopkins to McCrillis and Kendall, Dr.

| | | | |
|---|---|---|---|
| Item 1. | To cash (two notes on demand) | $1,700.00 | |
| 2. | To interest to Oct. 13, 1890 . . | 66.03 | |
| 3. | To cash furnished by G. S. McCrillis & Co. . . . . . . | 18.55 | |
| | Total . . . . . . . . . . . . . | | $1,784.58 |

Cr.

| | | | |
|---|---|---|---|
| Item 5. | By cash received for goods sold at private sale from Sept. 16 to Oct. 11, 1890 . . . . . | $974.50 | |
| 6. | By cash for goods sold at auction | 900.30 | |
| 7. | By rent collected of Pettengill . | 25.00 | |
| 8. | Total receipts . . . . . . . . | . . . | $1,899.80 |
| 9. | Paid rent of store, 39 Cornhill . | $139.58 | |
| 10. | Paid J. F. Huntington, clerk . | 75.00 | |
| 11. | Paid Parker, paper, twine, and charges . . . . . . . . | 98.95 | |
| 12. | Paid for merchandise purchased | 103.95 | |
| 13. | Paid auctioneer . . . . . . | 25.00 | |
| 14. | Paid G. S. McCrillis, services . | 25.00 | |
| 15. | Paid advertising . . . . . . | 7.00 | |
| 16. | Paid attorney's charges . . . | 10.00 | |
| 17. | Total charges . . . . . . . . . . | | $484.48 |
| 18. | Net amount applicable to payment of debt | | $1,415.32 |
| 19. | Balance due on said mortgage debt . . | | $369.26 |

The master further found as follows : " I find that each of the payments therein stated, as paid by the defendants, is for expenditures necessarily and properly incurred by the defendants at reasonable prices, and incurred with the knowledge and consent of the plaintiff. I further find that the defendants have never waived their right to continue to hold the household furniture under their mortgage, or their right to sell the same under the power of sale contained in the mortgage, and neither the plaintiff nor the defendants ever intended to waive such rights, and the defendants forbore to sell the same at the plaintiff's request, and his implied assurance that they should not lose any rights by such forbearance ; and further, that the plaintiff has waived, but not in express terms, all informalities of the defendants, and all right to take advantage thereof, and that the defendants throughout have been considerate of the plaintiff's interests and rights, and their conduct has resulted to his benefit. I find the amount due the defendants from the plaintiff, the sum of three hundred and sixty-nine and twenty-six hundredths dollars, as stated in said account, with interest to be computed thereon at six per cent from October 13, 1890, to the date of final decree."

The plaintiff excepted to the master's report for the following reasons : that in the second item of the account the interest was not correctly computed, because no interest should be allowed prior to the date of mortgage ; that the third item of the account was a charge against the plaintiff not covered by the mortgage ; that the ninth item of the account was not a proper charge against the plaintiff under the terms of the mortgage ; that the twelfth item in the account was an improper charge against the plaintiff, because it related to transactions in regard to merchandise not included in nor covered by the mortgage ; that in the account amounts received from the sale of mortgaged property could not be ascertained, because in the items thereof were included the proceeds of outside transactions in relation to merchandise and property not covered by the mortgage ; that the fourteenth item in the account was an improper charge for personal services by one of the mortgagees ; that the findings as to waiver therein were not findings of fact, and not properly determinable by the master ; that the balance due from the

plaintiff to the defendant was not correctly stated in the account, because of said improper charges against the plaintiff, and because of the mingling therein of the proceeds of sale of the mortgaged property with proceeds of sale of other merchandise so that the same were indistinguishable; that the account and the report were not correct, in that it was presumed therein that the mortgagees' proceedings to foreclose had been legal and valid, while it was found that the mortgagees had not waived any rights under prior mortgages, nor released the remnant of goods not sold in foreclosure proceedings under the present mortgage; whereas the plaintiff contended that the right to redeem, being entire, must be either foreclosed or open, and that on either theory the account as stated by the master was incorrect.

In the Superior Court, the plaintiff's exceptions to the master's report were overruled, and it was decreed that there was due from the plaintiff to the defendants "the sum of three hundred sixty-nine dollars and twenty-six cents, with interest thereon from October 13th, A. D. 1890, to the time of payment; that upon the payment by the plaintiff to the defendants of said sum due, with interest thereon as aforesaid, within thirty days from the date of this decree, the plaintiff shall hold the personal property conveyed by said mortgage which had not been sold by said defendants prior to the filing of said bill, as set forth in said bill, discharged of said mortgage, and the defendants shall execute and deliver to the plaintiff a discharge of said mortgage, but that upon failure of the plaintiff to pay to the defendants said sum due and interest thereon as aforesaid within said time, said bill shall be dismissed with costs to the defendants."

The plaintiff appealed to this court.

*W. O. Kyle*, for the plaintiff.

*J. F. Wiggin*, for the defendants, was not called upon.

BARKER, J.   The bill is drawn upon the theory that the mortgage, notwithstanding the partial foreclosure sale, is still a lien upon so much of the mortgaged property as remains unsold.   But in his exceptions to the master's report, the plaintiff attempts to put his case upon the theory that the partial sale exhausted the power, and released the remaining property. There is no occasion to consider whether the sale exhausted

the power, as that question is not raised in the bill ; and if the power is exhausted, which we do not intimate, the lien of the mortgage is not thereby defeated, and may be enforced as though no power of sale had been inserted.   The contention that the partial sales are void, and that the account should be stated without reference to them, is absurd.   None of the exceptions to the master's report have any foundation.   The plaintiff is not to be allowed to repudiate transactions entered into solely for his benefit and at his request, and all the items to which he objects are legitimate results of such transactions.

The finding as to waiver is pertinent, and supported by the facts found.

The result is that the exceptions to the master's report are overruled, and the decree of the Superior Court is affirmed, such modifications to be made in that court as the lapse of time may require.

*Exceptions to master's report overruled, and decree affirmed.*